IN THE UNITED STATES DISTRICT COURT
NORTHERNG DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MARCUS D. COLEMAN, | ) | CASE NO. 3:15-cv-1962 |
| | ) | |
| Petitioner, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| RHONDA RICHARD, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

## I.    Introduction

Currently before the court is the petition of Marcus D. Coleman, Ohio Inmate #685-780 for a writ of habeas corpus under 28 U.S.C. § 2254.  The matter was initially referred for report and recommendation to Magistrate Judge Greg White, who has since retired.  Subsequently, by minute order entered on March 29, 2016 – under the authority of General Order 2016-3 – the matter was referred to the undersigned for report and recommendation.

Coleman is currently incarcerated at the Madison Correctional Institution pursuant to a judgment entry issued by the Hancock County, Ohio, Court of Common Pleas on May 28, 2013 on Coleman's conviction for aggravated possession of drugs.[1]  For the reasons set forth below, it is recommended that the petition be DENIED and DISMISSED.

## II.    Relevant Factual Background

The Ohio Court of Appeals for the Third Appellate District, set forth the following facts on direct appeal:

---

[1] ECF Doc. No. 26-1, Page ID#284

{¶2}  During the early morning hours of October 13, 2012, Sergeant Kurt Beidelschies with the Ohio State Highway Patrol observed Coleman traveling southbound in a gray, four-door Dodge Sedan on I-75 within the City of Findlay, Hancock County, Ohio. (May 2, 2013 Tr. at 20, 25-26).  Beidelschies observed Coleman's vehicle pass a vehicle without using his turn signal and then pull in front of the vehicle, causing the driver of the other vehicle to apply his or her brakes when Coleman's vehicle entered its lane of travel. (*Id*. at 27).  Beidelschies then initiated a traffic stop for the turn-signal violation. (*Id.* at 27-28).  When Beidelschies informed Coleman that he stopped him for a turn-signal violation, Coleman responded, "Sorry about that." (*Id.* at 28).  Beidelschies noted that Coleman was "overly nervous" and the inside of Coleman's vehicle had "an absolutely overwhelming odor of deodorizer." (*Id*. at 30). Coleman was the only occupant of the vehicle. (*Id*. at 28).

{¶3}  Coleman provided Beidelschies with a Tennessee ID card, with Coleman's photo but the name Timothy Phelps, and a rental agreement for the vehicle in the name of Rodney Summers. (*Id*. at 28-30).  The rental agreement indicated that the vehicle had been rented the day before at 3:55 p.m. in Cincinnati, Ohio and that Summers was the only authorized operator of the vehicle. (*Id*. at 29).  When Coleman provided the Tennessee ID card, Beidelschies asked Coleman if his license was valid, and Coleman stated it was not. (*Id*. at 30).  Beidelschies then asked Coleman to come back to his cruiser, so Beidelschies could determine if Coleman had a valid driver's license and inquire about the rental agreement. (*Id*. at 31).  After Beidelschies determined that Coleman—who he still believed to be Timothy Phelps—did not have a valid driver's license, Beidelschies advised Coleman that he was going to issue a citation for driving without a license and tow Coleman's vehicle. (*Id*. at 35).

{¶4}  Because Coleman's vehicle was going to be towed, Beidelschies performed an administrative search of the vehicle. (*Id.* at 36).  During this administrative search, Beidelschies located a plastic grocery bag with ten smaller bags containing yellow pills, which Beidelschies believed was ecstasy, a Schedule I controlled substance. (*Id.* at 41).  Beidelschies also located dryer sheets inside the grocery bag and stuffed between the center console and the driver and passenger seats. (Id. at 43-44).  At that point, Beidelschies placed Coleman under arrest for possession of drugs. (*Id.* at 42).

{¶5}  On February 19, 2013, the Hancock County Grand Jury indicted Coleman on one count of aggravated possession of drugs in violation of R.C. 2925.11(A), a first-degree felony.

{¶6}  On February 27, 2013, Coleman appeared with counsel at arraignment and entered a plea of not guilty. (Doc. No. 5).

{¶7}  Coleman appeared pro se with standby counsel throughout the proceedings. (R368-574); (R369-2142).  Coleman, pro se, filed a motion to suppress in

February 2013, arguing that the stop was based on racial profiling in violation of the Equal Protection Clause, Trooper Beidelschies lacked a warrant, traffic violation, or other clear and articulable facts justifying the traffic stop, and the inventory search was not conducted in accordance with Ohio State Highway Patrol policy and was a fishing expedition. (Doc. No. 59).  On March 8, 2013, the State filed a memorandum in opposition. (Doc. No. 16).

{¶8}  On May 2, 2013, the trial court held a suppression hearing.  On May 16, 2013, the trial court issued a decision denying the motion to suppress. (Doc. No. 69).

{¶9}  On May 17, 2013, the trial court held a change-of-plea hearing, and Coleman entered a plea of no contest to the indictment. (May 17, 2013 Tr. at 6); (Doc. No. 72). The trial court subsequently found Coleman guilty. (May 17, 2013 Tr. at 27); (Doc. No. 72).

{¶10}  On May 28, 2013, the trial court sentenced Coleman to nine years imprisonment. (May 28, 2013 Tr. at 9). The trial court filed its judgment entry of sentence that same day. (Doc. No. 79). [2]

## III.    Relevant State Procedural History

### A.    Original Proceedings Leading to Conviction

On October 16, 2012, a grand jury in Hancock County issued an indictment charging Coleman with one count of aggravated possession of drugs in violation of O.R.C. § 2925.11(A).[3] The case was assigned case number 2012 CR 260.  At his arraignment hearing, Coleman waived his right to counsel and entered a not-guilty plea.[4]  Thereafter, Coleman filed a *pro se* motion for discovery,[5] a *pro se* motion to toll suppression deadline,[6] and a *pro se* motion to find the Ohio State Highway Patrol in contempt for failing to respond to a subpoena.[7]

---

[2] *State v. Coleman,* 3rd Dist. No. 5-13-15, 2014-Ohio-1483, 2014 Ohio App. LEXIS 1416.
[3] ECF Doc. 26-1,Ex. 1, Page ID# 141-142
[4] ECF Doc. 26-1,Ex. 2, Page ID# 143
[5] ECF Doc. 26-1, Ex. 3, Page ID# 144
[6] ECF Doc. 26-1, Ex. 4, Page ID# 147
[7] ECF Doc. 26-1, Ex. 5, Page ID# 149

On November 1, 2012, the trial judge appointed Attorney Michael C. Galose as stand-by counsel for Coleman.[8]  Coleman then filed a letter addressed to the trial judge requesting that the judge appoint different stand-by counsel.[9]  On January 4, 2013, the trial judge conditionally appointed Attorney John W. McMahon as stand-by counsel for Coleman.[10]  On January 11, 2013, the trial judge issued an order removing Attorney Galose as stand-by counsel and appointing Attorney McMahon as stand-by counsel in the case.[11]

On December 27, 2012, Coleman filed a *pro se* motion to dismiss.[12]  The State filed a memorandum in opposition[13] and Coleman filed a reply.[14]  On February 4, 2013, Coleman filed another *pro se* motion to dismiss[15] and a *pro se* motion to suppress all evidence seized from the traffic stop.[16]  The trial court issued a judgment entry on Coleman's motion to dismiss on May 15, 2013.[17]

On February 27, 2013, the State filed a motion to dismiss because Coleman had been re-indicted for the same offense under Hancock County Common Pleas Case No. 2013 CR 54.[18]  The State also moved the court to transfer the pleadings filed in Case No. 2012 CR 260 to the newly filed case.[19]  The trial court granted the State's motion to dismiss and transferred the pleadings to the new case, 2013 CR 54.[20]

---

[8] ECF Doc. 26-1, Ex. 6, Page ID# 156
[9] ECF Doc. 26-1, Ex. 7, Page ID# 157
[10] ECF Doc. 26-1, Ex. 8, Page ID# 158
[11] ECF Doc. 26-1 at Ex. 9, Page ID# 159
[12] ECF Doc. 26-1 at Ex. 10, Page ID# 161
[13] ECF Doc. 26-1 at Ex. 11, Page ID# 164
[14] ECF Doc. 26-1 at Ex. 12, Page ID# 167
[15] ECF Doc. 26-1 at Ex. 13, Page ID#  170
[16] ECF Doc. 26-1 at Ex. 14, Page ID# 175
[17] ECF Doc. 26-1at Ex. 28, Page ID# 277
[18] ECF Doc. 26-1 at Ex. 15, Page ID# 185
[19] ECF Doc. 26-1 at Ex. 15, Page ID# 185
[20] ECF Doc. 26-1 at Ex. 15, Page ID# 185

On February 19, 2013, a Hancock County grand jury re-indicted Coleman of one count of aggravated possession of drugs, in violation of O.R.C. § 2925.11(A), a first degree felony.[21] Coleman entered a not guilty plea.[22]  The motions previously filed by Coleman were transferred to the new case and the State filed a memorandum in opposition to Coleman's motion to suppress.[23]

On April 3, 2013, Coleman filed a memorandum requesting that the trial judge compel the Hancock County Sheriff's office to release Coleman's mail that had been seized.[24]  On April 8, 2013, Coleman filed a letter addressed to the court representing that his right to defend himself was being infringed.[25]  On April 15, 2013, Coleman filed a motion to find the Ohio State Highway Patrol in contempt for failing to comply with a subpoena.[26]  On April 19, 2013, Coleman filed a motion to hold the Hancock County Sheriff's Office in contempt for failing to comply with a subpoena.[27]

On April 29, 2013, Coleman filed an amended motion to suppress all evidence seized at the traffic stop.[28]  On May 2, 2013 and May 10, 2013, the trial court conducted a suppression hearing on Coleman's motion to suppress.[29]  On May 15, 2013, Coleman filed a memorandum in support of his motion to suppress.[30]  On May 16, 2013, the trial judge issued an order denying

---

[21] ECF Doc. 26-1 at Ex. 16, Page ID# 187
[22] ECF Doc. 26-1 at Ex. 17, Page ID# 189
[23] ECF Doc. 26-1 at Ex. 18, Page ID# 190
[24] ECF Doc. 26-1 at Ex. 19, Page ID# 204
[25] ECF Doc. 26-1 at Ex. 20, Page ID# 207
[26] ECF Doc. 26-1 at Ex. 21, Page ID# 208
[27] ECF Doc. 26-1 at Ex. 22, Page ID# 211
[28] ECF Doc. 26-1 at Ex. 23, Page ID# 214
[29] ECF Doc. 26-1 at Ex. 24, Page ID# 227
[30] ECF Doc. 26-1 at Ex. 25, Page ID# 251

Coleman's motion to suppress and affirming the trial date.[31]  On May 17, 2013, Coleman filed a

motion for reconsideration[32] which was denied in an entry dated June 5, 2013.[33]

The trial court also denied Coleman's motion to dismiss which had been filed in Case No.

2012 CR 260.  The court's order states that the motion had been taken under advisement after an

evidentiary hearing on February 14, 2013.[34]

On May 17, 2013, with the assistance of stand-by legal counsel, Coleman entered into a

written plea of no contest to the first degree felony of aggravated possession of drugs.[35]

Following a sentencing hearing where Coleman was again assisted by stand-by counsel, the trial

court sentenced Coleman to a mandatory term of 9 years in prison and journalized the sentencing

entry on May 28, 2013.[36]

### B.    Direct Appeal

Coleman filed a timely *pro se* notice of appeal on June 6, 2013.[37]  The trial judge ordered

that appellate counsel be appointed to represent Coleman in his appeal.[38]  Through counsel,

Coleman raised the following assignment of error and issues for review in his appellate brief:

Assignment of Error I:

The trial court erred on overruling Marcus D. Coleman's motion to suppress, in
violation of the Fourth and Fourteenth Amendments to the United States
Constitution, and Sections 2 and 14, Article I of the Ohio Constitution.

---

[31] ECF Doc. 26-1 at Ex. 25, Page ID# 251
[32] ECF Doc. 26-1 at Ex. 26, Page ID# 266
[33] ECF Doc. 26-1 at Ex. 27, Page ID# 273
[34] ECF Doc. 26-1 at Ex. 28, Page ID# 277
[35] ECF Doc. 26-1 at Ex. 29, Page ID# 280
[36] ECF Doc. 26-1 at Ex. 30, Page ID# 284
[37] ECF Doc. 26-1 at Ex. 31, Page ID# 287
[38] ECF Doc. 26-1 at Ex. 32, Page ID# 289

Issue Presented for Review I:

Were the trial court's findings of fact supported by competent, credible evidence?

Issue Presented for Review II:

Did Mr. Coleman demonstrate by a preponderance of the evidence that Sgt. Beidelschies stopped him based on Mr. Coleman's race?[39]

The State filed a brief in response on January 15, 2014.[40]  On April 7, 2014, the Third District Court of Appeals issued a decision affirming Coleman's conviction and sentence.[41]

**C.    Ohio Supreme Court**

On May 21, 2014, Coleman filed a timely *pro se* notice of appeal with the Ohio Supreme Court.[42]  In his memorandum in support of jurisdiction, Coleman asserted the following proposition of law:

The trial court erred in overruling Marcus Coleman's motion to suppress in violation of the Fourth and Fourteenth Amendments to the United States Constitution and Sections 2 and 14, Article I of the Ohio Constitution.

  I.  The trial court's findings of fact were not supported by competent, credible evidence.

 II.  The appellant demonstrated by more then [sic] a preponderance of the evidence that Officer Beidelschies stopped him based upon race.[43]

On July 2, 2014, Coleman also filed a motion to stay with the Supreme Court of Ohio.[44]  On September 3, 2014, the Supreme Court of Ohio declined jurisdiction.[45]

---

[39] ECF Doc. 26-2 at Ex. 33, Page ID# 295
[40] ECF Doc. 26-2 at Ex. 34, Page ID# 349
[41] ECF Doc. 26-2 at Ex. 35, Page ID# 376
[42] ECF Doc. 26-2 at Ex. 36, Page ID# 387
[43] ECF Doc. 26-2 at Ex. 37, Page ID# 390
[44] ECF Doc. 26-2 at Ex. 38, Page ID# 415
[45] ECF Doc. 26-2 at Ex. 39, Page ID# 417

### D.      Appellate Rule 26(B) Application to Reopen Direct Appeal

On July 2, 2014, Coleman filed a timely *pro se* Ohio App. R. 26(B) application to reopen his direct appeal based on a claim of ineffective assistance of appellate counsel.[46]  Coleman asserted that his counsel was ineffective in failing to raise the following issues on appeal:

1.  The trial court erred in not addressing, determining or ruling on Marcus Coleman's motion to dismiss filed on February 4, 2013, violating Mr. Coleman's Fourteenth Amended of the United States Constitution and its Due Process Clause thereof.

2.  The trial court erred in convicting Marcus Coleman of aggravated possession of N-Benzylpiperazine, a substance not identified on the State of Ohio's drug schedule.  The failure of the State to not identify N-Benzylpiperazine as an illegal substance is unconstitutionally vague and a violation of the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States of America.[47]

In an entry dated August 20, 2014, the Third District Court of Appeals found that Coleman had failed to show any genuine issue as to whether he was deprived of the effective assistance of counsel and denied his application.[48]

On October 2, 2014, Coleman filed a *pro se* notice of appeal with the Ohio Supreme Court.[49]  In his memorandum in support of jurisdiction, Coleman asserted that the following assignments of error were not considered on appeal due to counsel's ineffectiveness:

1.  The trial court erred in not addressing, determining or ruling on appellant's motion to dismiss, filed on February 4, 2013, violating appellant's Fourteenth Amendment of the United States Constitution and its Due Process Clause thereof.

2.  The trial court erred in convicting Marcus Coleman of aggravated possession of N-Benzylpiperazine, a substance not identified on the State

---

[46] ECF Doc. 26-2 at Ex. 40, Page ID# 418
[47] ECF Doc. 26-2 at Ex. 40, Page ID# 418
[48] ECF Doc. 26-2 at Ex. 41, Page ID# 431
[49] ECF Doc. 26-2 at Ex. 42, Page ID# 433

> of Ohio's drug schedule. The failure of the State to not identify N-Benzylpiperazine as an illegal substance in the State's controlled substance schedules is unconstitutionally vague and a violation of Due Process Clause of the Fourteenth Amendment of the Constitution of the United States of America.[50]

On December 24, 2014, the Supreme Court of Ohio declined jurisdiction.[51]

## IV.    Federal Habeas Corpus Petition

On September 23, 2015, Coleman filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[52] In his petition, Coleman asserts the following grounds for relief:

**GROUND ONE:**
The trial court erred in overruling Marcus D. Coleman's motion to suppress in violation of the Fourteenth Amendment of the United States Constitution. Marcus D. Coleman proved beyond a preponderance of the evidence that officer Beidelschies stopped him predicated upon race.

**GROUND TWO:**
The trial court erred in overruling Marcus D. Coleman's motion to suppress, in violation of the Fourteenth Amendment of the United States Constitution. The trial court's findings of fact were not supported by competent credible evidence.

**GROUND THREE:**
The trial court erred in convicting Marcus D. Coleman for a substance not identified on the State of Ohio's drug schedule, a violation of the Fourteenth Amendment of the United States Constitution's due process.

**GROUND FOUR:**
The trial court erred in not addressing, determining or ruling on Petitioner's motion to dismiss, violating the Fourteenth Amendment of the United States Constitution.

---

[50] ECF Doc. 26-2 at Ex. 43, Page ID# 436
[51] ECF Doc. 26-2 at Ex. 44, Page ID# 455
[52] ECF Doc. 1, Page ID# 1

**GROUND FIVE:**

The Ineffective Assistance of Counsel, a violation of the Sixth and Fourteenth Amendment of the United States Constitution.[53]

## V.     Applicable Law

### A.     Jurisdiction

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court."  A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him" 28 U.S.C. § 2241(d).  The Court of Common Pleas of Cuyahoga County sentenced petitioner and Cuyahoga County is within this court's geographic jurisdiction. Accordingly, this court has jurisdiction over petitioner's § 2254 petition.[54]

### B.     Governing Standards

#### 1.     Procedural Default

A federal court may not review "contentions of federal law… not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure." *Wainwright v. Sykes,* 443 U.S. 72, 87 (1977).   When a petitioner "has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); see also *Gray v. Netherland*, 518 U.S. 152, 162 (1996).

---

[53] ECF Doc. 1, Page ID# 1
[54] ECF Doc. No. 26-1 at Ex. 30, Page ID# 284; 28 U.S.C. § 115(a)

"A claim may become procedurally defaulted in two ways." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  First, a claim is procedurally defaulted where state-court remedies have been exhausted within the meaning of § 2254, but where the last reasoned state-court judgment declines to reach the merits because of a petitioner's failure to comply with a state procedural rule. *Id.* Second, a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule. *Id.*

If the State argues that a petitioner had procedurally defaulted, the court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule… Second, the court must decide whether the state courts actually enforced the state procedural sanction… Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim… This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate. . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986).

## 2.      Cognizable Federal Claim

A federal court's consideration of a petition for a writ of habeas corpus filed by a petitioner imprisoned under the judgment of a state court is governed by 28 U.S.C. § 2254(a), which permits the state prisoner to challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  *Id.* To say that a

petitioner's claim is not cognizable on habeas review is another way of saying that his claim "presents no federal issue at all." *Bates f. McCaughtry,* 934 F.2d 99, 101 (7th Cir. 1991).

Federal habeas corpus relief "does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990), and the federal court is bound by the state court's interpretations of state law. *See e.g. Wainwright v. Goode,* 464 U.S. 78, 84 (1983). A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure. *Allen v. Morris,* 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago,* 809 F.2d 326, 328 (6th Cir. 1987). "[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Allen,* 845 F.2d at 614, quoting *Machin v. Wainwright,* 758 F.2d 1431, 1433 (11th Cir. 1985).

### 3.    Actual Innocence

In *Schlup v. Delo*, 513 U.S. 298, 314-315, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995), the Supreme Court held that a habeas petitioner who makes a "colorable showing of factual innocence" that would implicate a "fundamental miscarriage of justice" may be entitled to have "otherwise barred constitutional claim[s] considered on the merits." This exception is concerned with actual, as opposed to legal, innocence and must be based on reliable evidence not presented at trial. *Schlup,* 513 U.S. at 324; *Calderon v. Thompson,* 523 U.S. 538, 559 (1998). In such cases, a petitioner must "support his allegations of constitutional error with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." *Schlup,* 513 U.S. at 324.

### 4.    Merits Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, establishes the standard of review that federal courts must apply when considering applications

for a writ of habeas corpus.  Under the AEDPA, federal courts have limited power to issue a writ

of habeas corpus with respect to any claim which was adjudicated on the merits by a state court.

Section 2254(d) allows the court to grant habeas corpus relief only when the adjudication of the

claim by the state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.28 U.S.C. §
> 2254(d). The Supreme Court has made a distinction between the "contrary to" and
> "unreasonable application of" provisions of § 2254(d)(1).

In *Wilson v. Taylor,* 529 U.S. 362, 412-413 (2002), the U.S. Supreme Court explained

that under the "contrary to" clause, a federal habeas court may grant the writ if the state court

arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if

the state court decided a case differently than the Supreme Court on a set of materially

indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may

grant the writ if the state court identifies the correct governing legal principle from this Court's

decisions but unreasonably applies that principle to the facts of the prisoner's case.  *See also,*

*Lorraine v. Coyle,* 291 F.3d 416, 421-422 (6th Cir. 2002), cert denied. 538 U.S. 947 (2003).  A

state court is not unreasonable because the federal court considers the state decision to be

erroneous or incorrect.  Rather, the federal court must determine that the state court decision is

an objectively unreasonable application of federal law.  *Williams,* 529 U.S. at 410-412.

VI.     **Analysis**

    A.     **Grounds One and Two**

Both Grounds One and Two of Coleman's petition relate to his motion to suppress which

was denied by the trial court.  In Ground One, he argues that he proved that the stop initiated by

Officer Beidelschies was improperly motivated by race.  In Ground Two, he argues that the trial court's denial of his motion to suppress was not supported by competent credible evidence.

In *Stone v. Powell* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), the United States Supreme Court held that when a state prisoner has already been provided an opportunity for full and fair litigation of a Fourth Amendment claim, federal habeas corpus relief is not available on a claim that evidence obtained through an unconstitutional search or seizure should have been excluded from admission at his trial. *Stone* 428 U.S. at 494.  The court reasoned that the exclusionary rule was a judicially created means of effectuating the rights secured by the Fourth Amendment.  *Stone,* 428 U.S. at 482.  The court further recognized that the primary justification for the exclusionary rule was to deter police conduct that violated Fourth Amendment Rights; it did not establish a personal constitutional right.  *Stone* 428 U.S. at 486. The Court opined that the granting of habeas review in cases involving the exclusionary rule would contribute little, if anything, to the effectuation of the Fourth Amendment and was outweighed by the substantial societal costs of application of the rule. *Stone* 428 U.S. at 494.  For these reasons, the Court held that habeas review was precluded on Fourth Amendment grounds if the prisoner had already been provided an opportunity for full and fair litigation of that issue in state court. *Id.*

In *Good v. Berguis,* 729 F.3d 636, 638-639 (2013), the Sixth Circuit Court of Appeals affirmed that Fourth Amendment claims are barred by *Stone*.  In its discussion of the treatment of the issue by other federal circuits, it noted two exceptions to the *Stone* prohibition:  "[r]eview of Fourth Amendment claims in habeas petitions [may] be undertaken in only one of two instances: (A) if the state has provided no corrective procedures at all to redress the alleged Fourth Amendment violations; or (b) if the state has provided a corrective mechanism, but the

14

defendant was precluded from using that mechanism… *Id.,* citing, *Capellan v. Riley* 975 F.2d 67, 70 (2d Cir. 1992).

Grounds One and Two of Coleman's petition arise from the trial court's refusal to suppress evidence allegedly seized in violation of Coleman's Fourth Amendment rights.  The trial court conducted a full suppression hearing concerning Coleman's Fourth Amendment violation claims and issued a decision denying Coleman's motion to suppress.  Coleman appealed the trial court's decision; the state court of appeals considered his arguments and affirmed the trial court's ruling.  The Sixth Circuit Court of Appeals has recognized that, in most instances, the mechanism provide by the State of Ohio for the resolution of Fourth Amendment claims is adequate.  *Riley v. Gray*, 674 F.2d 522, 526 (1982).  Here, Coleman was given a full and fair opportunity to litigate his claim of a Fourth Amendment violation in state court.  Consequently, this court is not permitted to re-examine the Fourth Amendment suppression argument in the present context.

Coleman's petition essentially argues that the trial court and court of appeals made the wrong decision in their evaluation of the evidence concerning his Fourth Amendment claims.  Coleman contends he proved that he was stopped on the highway by an Ohio State Patrol trooper who was motivated by racial bias; and he asserts that the trooper's testimony was laced with inconsistencies to such a degree that it should have been disregarded.  Coleman even cites a decision by Judge James Carr in *U.S. v. Younis,* 890 F.Supp.2d 218, which involved the same Trooper Beidelscheis and a determination that a similar traffic stop was unlawful.  However, in *Younis*, Judge Carr was the trial judge and directly ruled on the alleged Fourth Amendment violation.  Thus, the decision in *Younis,* even though it involves the same law enforcement officer, does not stand for the proposition that a habeas court may reconsider an alleged Fourth

Amendment violation, which was fully considered in state court.  Even if this court were compelled by the arguments asserted in Coleman's motion to suppress, it is not permitted to review the trial court's decision on the motion to suppress in the context of a habeas review. Coleman does not argue that the hearing was deficient or that he was in some way prevented from fully presenting his claims and his supporting arguments in support thereof.  Because this court is not permitted to re-examine Coleman's Fourth Amendment arguments under the habeas statute when they have been fully and fairly litigated in state court, Grounds One and Two are barred.  *Stone*, 428 U.S. at 494.  The undersigned recommends the denial of Grounds One and Two of Coleman's petition on that basis.

> **B.** **Grounds Three & Four**

In Ground Three, Coleman contends that the trial court erred in convicting him of a substance not identified on the State of Ohio's drug schedule.  In Ground Four, Coleman argues that the trial court erred in not addressing the petitioner's motion to dismiss.

Respondent argues that Grounds Three and Four of Coleman's petition present non-cognizable claims, were waived as a result of Coleman's no contest plea and are procedurally defaulted.  The undersigned has considered the parties' arguments and recommends that Grounds Three and Four of Coleman's petition be denied for the reasons stated below.

> **1.  No Contest Plea**

After the entry of an unconditional plea, a defendant may only attack the court's jurisdiction and the voluntary and intelligent character of the plea itself.  *Werth v. Bell,* 692 F.3d 486 (6th Cir. 2012);  *Tollett v. Henderson,* 411 U.S. 258, 266 (1973).  "[G]uilty pleas 'not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.'" *Ruelas v. Wolfenbarger,* 580 F.3d 403, 408

(6th Cir. 2009) (quoting *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)).  The same standard applies to the validity of a no-contest plea.  *See Fautenberry v. Mitchell,* 515 F.3d 614, 636-637 (6th Cir. 2008).  The validity of the plea must be determined from the "totality of the circumstances." *Abdus-Samad v. Bell,* 420 F.3d 614, 631 (6th Cir. 2005) (citing *Brady,* 397 U.S. 747).

When a habeas petitioner challenges the validity of his plea, "the state generally satisfies its burden [to show that the plea was voluntary and intelligent] by producing a transcript of the state court proceeding." *Garcia v. Johnson,* 991 F.2d 324, 326 (6th Cir. 1993).  "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L. Ed. 2d 136 (1977).  The state's court factual finding that the plea was proper is accorded a presumption of correctness unless the transcript is inadequate to show that the plea was voluntary and intelligent. *Garcia,* 991 F.2d at 326-327; see U.S.C. § 2254 (e)(1).

Respondent has filed the transcript from the plea hearing in state court.[55]  During the plea colloquy, which took place on May 17, 2013, the trial judge explained the charges in the indictment and asked Coleman if he had any questions.  During this explanation, the judge stated, "Now the charge returned against you by the grand jury relates to Schedule I controlled substance N-Benzylpiperazine, BZP is the common name."[56]  He then asked Coleman if that was his understanding and Coleman responded, "yes."[57]  The trial judge also explained the possible sentences that Coleman could face as a result of his plea, including the maximum sentence,

---

[55] ECF Doc. 26-8 at pp. 589-618, Page ID# 693
[56] ECF Doc. 26-8  at p. 601, Page ID# 705
[57] ECF Doc. 26-8 at p. 601, Page ID# 705

mandatory time and post release control.[58]  The trial judge explained to Coleman the rights he would be waiving by entering a no-contest plea, including his right to a jury trial or bench trial, the right to publicly testify, to face his accusers, to call witnesses to testify and the right against compulsory self-incrimination.[59]  Coleman indicated that he understood each of the rights he was forfeiting and, when given opportunities, did not ask any questions.  Coleman indicated that he wanted to enter into a no-contest plea and he signed a document evidencing his plea of no contest, which was filed on May 17, 2013.[60]  There was nothing unusual about Coleman's plea colloquy, and Coleman is not now contending that his plea was involuntary or uninformed.

As established through the hearing transcript, Coleman was aware that the indictment contained a charge involving a Schedule I controlled substance, N-Benzylpiperazine, "BZP," when he pled no-contest.  Similarly, at the time he entered his plea, he was aware that he had previously filed a motion to dismiss the indictment.  In *Tolette v. Henderson,* the U.S. Supreme Court stated,

> A guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

The same standard applies to the validity of a no-contest plea.  *See Fautenberry v. Mitchell,* 515 F.3d 614, 636-637 (6th Cir. 2008).  In fact, the trial judge explained to Coleman that his plea of no contest would likely result in a finding of guilty as to the charge in the indictment.  During the plea colloquy, the judge stated:

> You're waiving or giving up one other very important right here. And if this were a plea of guilty it would be your right against compulsory self-incrimination.

---

[58] ECF Doc. 26-8 at 602-609, Page ID# 706
[59] ECF Doc. 26-8 at pp. 607-613, Page ID# 711
[60] ECF Doc. 26-1 at Ex. 29, Page ID# 280

You're still giving up that right, but it's a little bit different here with a plea of no contest. And we're going to talk about it.

Generally, if a plea of guilty is brought to the Court, I make inquiry of a Defendant in open court on the record about the criminal conduct that constitutes the offense before the court.  Obviously with a plea of no contest you are preserving your right to appeal.  You have every right not to address the Court and answer questions about the criminal conduct here that's before the Court.

But the court still has to make a finding based upon the indictment.  I've heard the evidence in the context of the motion to suppress.  The Prosecutor's also going to stand up here and make a professional statement about what the State's evidence at trial would be.  Based upon her professional statement this afternoon and the evidence I heard in the context of the motion to suppress, I'll make a decision then as to your guilt or innocence as to the charge before the court.  Do you understand?

THE DEFENDANT: Yes.

 As stated above, after entering a no contest plea, Coleman may only attack the court's jurisdiction and the voluntary and intelligent character of the plea itself.  He has not attempted to attack either.  Rather, he has attempted to assert alleged constitutional violations by the state court that occurred prior to his plea agreement.   The undersigned finds that Coleman's no-contest plea was voluntary and knowingly made.  He is not permitted to raise independent claims in his habeas petition which were related to matters that occurred prior to the entry of his plea. *Tolette*, 411 U.S. at 258.  For this reason, the undersigned recommends that the court dismiss Grounds Three and Four of Coleman's habeas petition.

## 2. Alternative Reasons for Dismissal of Grounds Three and Four

Even if the court were to further consider Grounds Three and Four, they would still face dismissal  because they raise only non-cognizable state law issues.  Federal habeas courts have no authority to interfere with state law unless the petitioner is denied fundamental fairness in the trial process. *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Department of Correction,* 4 F.3d 1348, 1354 (6th Cir. 1993).  Whether Coleman was convicted of a charge

related to a substance not identified on the State of Ohio's drug schedule and whether the trial judge failed to properly rule on a motion to dismiss are strictly state law issues.  This court does not have the authority to interfere with the state law involved in Grounds Three and Four of Coleman's petition. [61]

Grounds Three and Four should also be dismissed because they are procedurally defaulted.  Coleman did not raise either of these issues on direct appeal.  Although he later argued that his appellate counsel was ineffective for failing to raise these issues on direct appeal in his 26(B) application to re-open his appeal, those ineffective assistance claims are analytically different from the third and fourth grounds of his habeas petition. *Davie v. Mitchell,* 547 F.3d 297, 312 (6th Cir. 2008); *White v. Mitchell,* 431 F.3d 517, 526 (6th Cir. 2005).  "[A] Rule 26(B) application 'based on ineffective assistance cannot function to preserve' the underlying substantive claim. *Id.*; see also *Roberts v. Carter,* 337 F.3d 609, 615 (6th Cir. 2003) (noting that, "[i]n light of the requirements of Rule 26(B), the court's holding must be read as pertaining to the merits of" the ineffective assistance claim, not the underlying state procedural rule claim).

---

[61] Even if it could reexamine this issue in order to evaluate Coleman's claim that the Ohio statue was unconstitutionally vague because it did not list the drug at issue on the state list of Schedule I controlled substances, the court would be required to find that Coleman's argument is simply wrong.  Section 3719.43 of the Ohio Revised Code indicates that when "the attorney general of the United States adds a compound, mixture, preparation, or substance to a schedule of the laws . . . then such addition . . . is automatically effected in the corresponding schedule or schedules in section 3719.41 of the Revised Code, subject to amendment pursuant to section 3719.44 of the Revised Code."  On March 18, 2004 the DEA published a Final Rule in the Federal Register permanently placing BZP in Schedule I; thus from that date, BZP was a Schedule I controlled substance under Ohio law.  (https://www.deadiversion.usdoj.gov/drug_chem_info/bzp.pdf; accessed November 3, 2016)  Moreover, Ohio courts have held that such a legislative approach does not constitute an unconstitutional delegation of legislative authority.  *See State v. Ingram*, 64 Ohio App.3d 30 (1st Dist. App. 1989.  *Ingram* recognized the question presented to implicate only Ohio constitutional law: "The Ohio Constitution vests the legislative power in the Ohio General Assembly.  This power may be delegated to a certain extent so long as the legislature creates and defines standards and guidelines for the administration of the delegated power."

Here, Coleman's 26(B) application cannot be construed as raising the substantive claims he attempts to assert in Grounds Three and Four.  And because the state courts determined that Coleman failed to demonstrate a "genuine issue" that his appellate counsel was ineffective for failing to raise that claim[62], the courts refused to open Coleman's direct appeal, thereby imposing a procedural bar to consideration of the claim.  As a consequence, the claims Coleman attempts to raise in Grounds Three and Four of his petition are procedurally defaulted—he failed to raise the claims on direct and collateral review in state court, and the state courts determined that he did not make the requisite showing in his Rule 26(B) application to justify reopening his direct appeal.  For this reason, Grounds Three and Four are barred unless Coleman can show cause and prejudice. *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986).  It is true that if this court were to find that Coleman's ineffective assistance claim had merit, that could serve as cause to excuse the procedural default of the substantive claims he has attempted to assert in Grounds Three and Four. See *Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S. Ct. 1587, 146 L. Ed. 2d 518 (2000). But for the reasons stated below,[63] Coleman's ineffective assistance claim did not have merit and he has failed to show cause or prejudice for his failure to raise Grounds Three and Four on direct appeal.

The Supreme Court has established a two part test for review of ineffective assistance of counsel: that first, the defendant must show that counsel's performance was deficient -- that counsel made "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and second, the defendant must show that counsel's deficient performance prejudiced the defense to the degree that it deprived the defendant of a fair trial. *Strickland v. Washington,* 466 U.S. 668, 687, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). The

---

[62] ECF Doc. 26-2 at Ex. 41, Page ID# 431
[63] In addition to the reasons stated in Footnote 61 above.

court presumes that counsel is competent and places the burden on Coleman to demonstrate a constitutional violation. See *United States v. Pierce,* 62 F.3d 818, 833 (6th Cir. 1995).

Coleman's Rule 26(B) application argued that his appellate counsel was ineffective for failing to argue on appeal that the trial court had failed to rule on a motion to dismiss that Coleman filed before he pled no contest. Such an alleged error was not so serious as to deprive petitioner of his right to effective assistance of counsel. First, the trial judge arguably did rule on Coleman's motion to dismiss when he dismissed 12 CR 260, the case in which Coleman filed his motion.[64] Second, in a judgment entry filed on May 15, 2013, the trial judge referred to the dismissal of Case Number 2012-CR-260 and his prior order that "all pleadings filed [in that case] be transferred to case number 2013-CR-54," the case in which he was convicted. Third, Ohio appellate courts presume that a trial court overruled a motion on which it did not expressly rule, where it is clear that that is what the trial court actually intended to do. See *Newman v. Al Castrucci Ford Sales, Inc.*, 54 Ohio App.3d 166, 561 N.E.2d 1001 (1988). Thus, even if the trial court did not rule on Coleman's February 4th motion to dismiss (which essentially contended that the Ohio State Patrol had not complied with its own policies to video record and preserve the recordings of traffic stops), the court of appeals would have presumed it had been denied. The issue raised by Coleman – that the trial court did not address his motion to dismiss – would have simply been considered harmless error, at most. Appellate counsel's failure to raise this issue on direct appeal was not deficient performance of counsel.

Likewise, appellate counsel's failure to raise the issue of the controlled substance that Coleman possessed not being identified in Ohio's drug schedule was not deficient performance of counsel. At the plea colloquy, the trial judge specifically explained the charge in the

---

[64] ECF Doc. 26-1 at Ex. 15, Page ID# 185 and Ex. 28, Page ID# 277

indictment and identified the substance involved and Coleman indicated that he understood and had no questions.  By proceeding to plead no contest to this charge, Coleman waived any argument regarding the substance not being identified under Ohio's drug schedule.  Thus, failing to raise this unmeritorious issue on appeal was not deficient performance on appellate counsel's part.  Coleman has failed to show that he received ineffective assistance of appellate counsel.  Consequently, this cannot establish "cause" for failing to raise Grounds Three and Four in state court.

Regarding the "prejudice" component, the Supreme Court has indicated that "[t]he habeas petitioner must show not merely that the errors … created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage infecting his entire trial with error of constitutional dimensions.  Such a showing of pervasive actual prejudice can hardly be thought to constitute anything other than a showing that the prisoner was denied 'fundamental fairness' at trial." *Murray,* 477 U.S. at 494.  Coleman did not proceed to trial; he chose to enter a plea.  He has not, therefore, demonstrated cause or prejudice and the *Maupin* criteria have been satisfied as to Counts Three and Four.

The court is also required to consider whether Coleman's procedural default on Grounds Three and Four should be excused because the alleged constitutional violation has "probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496.  Coleman has not presented any new evidence of or even an argument that he is actually innocent, and there is no basis for excusing his procedural default on Grounds Three and Four of his petition.  For these reasons, the undersigned finds that, in addition to the other reasons stated above, the Court should dismiss Grounds Three and Four of Coleman's habeas petition as procedurally defaulted.

### C.    Ground Five

In Ground Five, Coleman asserts that his Sixth and Fourteenth amendment rights were violated through the ineffective assistance of appellate counsel.  Coleman raised ineffective assistance of appellate counsel in his App. R. 26(B) application and in his subsequent appeal to the Ohio Supreme Court.  Respondent argues that Coleman has not established that the state appellate court's determination is contrary to or an unreasonable application of clearly established Supreme Court precedent.

28 U.S.C. § 2254 allows a person in state custody "in violation of the Constitution or laws or treaties of the United States" to be granted relief.  28 U.S.C. § 2254(a).  Section 2254(d) allows the court to grant habeas corpus relief only when the adjudication of the claim by the state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.28 U.S.C. § 2254(d). The Supreme Court has made a distinction between the "contrary to" and "unreasonable application of" provisions of § 2254(d)(1).

In denying Coleman's application to reopen his appeal pursuant to App. R. 26(B), because of the ineffective assistance of his appellate counsel, the Ohio Court of Appeals stated:

> Upon consideration the Court finds that the additional issues raised in Appellant's application fail to show any genuine issue as to whether he was deprived of the effective assistance of counsel on appeal.  App. R. 26(B)(5).  *State v. Reed,* 74 Ohio St.3d 534 (1996), applying the analysis of *Strickland v. Washington*, 466 U.S. 668 (1984).  See, also *State v. Bradley,* 42 Ohio St.3d 136 (1989).  Contrary to Appellant's assertion, the absence of a cruiser video of the stop was raised by appellate counsel and addressed in the Court's opinion.  The application does not show that appellate counsel's performance fell below an objective standard of reasonable representation or that there is any reasonable probability the result would be different if it were not for appellate counsel's purported errors.  Accordingly, the application is not well taken.

24

Upon review of Coleman's App. R. 26(B) application and the appellate court's ruling on that application, the undersigned finds that the state court did not unreasonably apply or arrive at a decision that was contrary to federal law.  The court of appeals identified the correct governing principles from *Strickland v. Washington* and reasonably applied them to the grounds for re-opening appeal asserted by Coleman.  Coleman has failed to identify any deficiencies in the performance of his appellate counsel that deprived him of effective assistance of counsel or prejudiced his appeal.  For this reason, the undersigned recommends that Ground Five of Coleman's petition for writ of habeas corpus be DENIED and dismissed.

> **D.     Evidentiary Hearing**

Generally, a habeas petitioner is entitled to an evidentiary hearing in federal court if the petition "alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing." *Stanford v. Parker,* 266 F.3d 442, 459-460 (6th Cir. 2001), *citing Wilson v. Kemna,* 12 F.3d 145, 146 (8th Cir. 1994).  However, a petition may be summarily dismissed without hearing if the record clearly indicates that the petitioner's claims are either barred from review or without merit. *See Id.*  In the present matter, Coleman has not alleged sufficient grounds for release, the relevant facts are not in dispute, and the state courts held full and fair evidentiary hearings related to claims in Coleman's petition.  The transcripts of the trial court's hearings have been filed and the record before the court shows that petitioner's claims are barred from review.  For this reason, the undersigned reports that an evidentiary hearing is not necessary in this case.

### E. Recommendation Regarding Certificate of Appealability

#### 1. Legal Standard

As amended by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)(quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n. 4 (1983)); *accord Slack v. McDaniel*, 529 U.S. 473, 483-484 (2000). The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks the requirement of § 2253(c)(3) that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by §

26

2253(c)(2)," Rule 11(a).  In light of the Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

### 2.  Analysis

In Grounds One and Two, Coleman has asserted claims related to his Fourth Amendment right protecting him from unreasonable search and seizure.  As stated herein, Coleman was given a full and fair opportunity to litigate his claim of a Fourth Amendment violation in state court. Consequently, habeas review is precluded on his claim of a Fourth Amendment violation and the trial court's ruling on his motion to suppress.  *Stone*, 428 U.S. at 494.  The undersigned recommends the denial of Grounds One and Two of Coleman's petition on that basis.

As to Grounds Three and Four, when a petition is to be dismissed on a procedural basis, the inquiry under § 2253(c) is two-fold.  In such cases, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack, 529 U.S. at 485 (emphasis added).  As the Court explained, "[w]here a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further.  In such a circumstance, no appeal would be warranted."  Id. at 486.  If the Court accepts the foregoing recommendation, Coleman cannot show that the Court's rulings on the procedural defaults of Grounds Three and Four are questionable.

As to Ground Five, Coleman has failed to show that the state court unreasonably applied the applicable principles announced in *Strickland v. Washington*, 466 U.S. 668 (1984).  Coleman

has failed to make a substantial showing of a denial of his constitutional rights. Thus, the Court should conclude that Coleman is not entitled to a certificate of appealability in this case.

## VII. Conclusion

For the reasons stated herein, the undersigned recommends that the court DENY and DISMISS each of the grounds asserted in Coleman's petition for a writ of habeas corpus under 28 U.S.C. § 2254.

Dated: <u>November 7, 2016</u>

Thomas M. Parker
U.S. Magistrate Judge

## VIII. Notice to Parties Regarding Objections:

Local Rule 73.2 of this court provides:

Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections that raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and

Recommendation.  *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).